Filed 07/22/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-04084

| | |
|---|---|
| Nicholas Fish,<br>    Plaintiff<br><br>    v.<br><br>Diocese of Gaylord, The Bishop of the Diocese,<br>and Saint Francis Xavier of Petoskey,<br>    Defendants | DECISION ON MOTION |

## RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Nicholas Fish alleges that when he was twelve years old, he was sexually abused by Father John Tupper, a Catholic priest employed by Defendant Diocese of Gaylord. In his Amended Complaint, Fish alleges that the Diocese and the other Defendants, the Bishop of the Diocese and Saint Francis Xavier of Petoskey ("Saint Francis Parish"), are liable for Tupper's misconduct and he asserts claims for negligent and/or grossly negligent supervision and outrageous conduct. Fish and all named Defendants are Michigan residents, but the alleged abuse occurred in Vermont. Defendants now move to dismiss the Amended Complaint pursuant to Rule 12(b)(2) of the Vermont Rules of Civil Procedure, asserting that this Court lacks personal jurisdiction over them. The Court heard oral argument on the motion on June 26, 2026. Fish is represented by Attorneys Celeste E. Laramie, Esq. and Chris M. Bohórquez, Esq. and Defendants are represented by Attorneys Nicole Andreson, Esq. and Margarita I. Warren, Esq. For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

## Factual Background

Fish alleges the following facts in his Amended Complaint.[1] Father John Tupper, an ordained priest in the Roman Catholic Church, was a practicing priest within the Diocese in Michigan under the direct supervision, employ, and control of the Bishop and the Diocese. Am. Compl. ¶ 9. Fish and his grandfather lived in Michigan, and Fish's grandfather was a former parishioner of Tupper. *Id.* ¶ 34. Tupper held himself out to Fish and his grandfather as Fish's religious and spiritual counselor. *Id.* ¶ 10. During the summer of 1999, Tupper discussed and proposed to Fish's grandfather that Tupper take Fish on an out-of-state trip so that Fish could spend some time away from a difficult home environment. *Id.* ¶ 41. Tupper informed Bishop Cooney (his then superior) of his intention to travel out of state with Fish for the purpose of visiting St. Anne's Shrine in Isle La Motte as well as retreat centers in Maryland and New York.

---

[1] The Court focuses only on the facts relevant to the issue of personal jurisdiction and does not recite all facts concerning Defendants' alleged liability.

*Id.* ¶ 43. Tupper asked Cooney for financial assistance from the Diocese for this trip, which Cooney agreed to provide. *Id.* ¶¶ 45-46. At that time, Cooney was aware of allegations made against Tupper of involvement in sexual misconduct with both girls and boys. *Id.* ¶ 42.

During Fish's trip to Vermont with Tupper, Tupper sexually abused Fish. *Id.* ¶ 48. Following the trip, Fish and his grandfather confronted Cooney about Tupper's abuse of Fish. During the meeting, Cooney acknowledged that he was aware of Tupper's plans to travel with Fish to Vermont, that he had expressly approved of the itinerary, and that he had provided funding for the trip through the Diocese. *Id.* ¶¶ 50-51. In addition, Cooney acknowledged that there were other accusations and "causes for concern" regarding Tupper. *Id.* ¶¶ 52, 54. Therefore, the Diocese "knew Tupper posed a danger to minor children and had the propensity to act in a sexually inappropriate manner." *Id.* ¶ 56.

### Defendants' Affidavit re Personal Jurisdiction

In support of their motion to dismiss, Defendants submit an affidavit by Reverand James P. Hayden, who, as of October 1, 2020, is the Moderator of the Curia/Vicar General for the Diocese. Hayden Aff. ¶ 1. As Vicar General and Moderator of the Curia, Hayden has "oversight and supervision of the Diocese's financial records and the clergy files relevant to every priest ordained in the Diocese and/or any priest that has had an assignment or appointment in the Diocese." *Id.* ¶ 15. In 1999, Hayden served as Director of Priestly Vocations for the Diocese of Gaylord. *Id.* ¶ 8.

Hayden states that neither "the Diocese nor St. Francis Xavier sent Fr. Tupper to Vermont on their behalf for any reason, ministerial, business, or otherwise." *Id.* ¶ 26. In addition, Hayden attaches a copy of a financial record as Exhibit 2 to the Affidavit that he states represents expense reimbursements submitted by Tupper between 1997 and 2001. According to Hayden, the "ledger entries do not reflect . . . that the Diocese reimbursed, advanced or paid Fr. Tupper for travel to the State of Vermont in the summer of 1999," as Fish alleges. *Id.* ¶ 35. In fact, Hayden contends that "the Diocese's financial records contain no entry reflecting that the Diocese advanced or reimbursed Fr. Tupper for travel to Vermont, or New York, or Maryland in 1999, or at any other time." *Id.* Exhibit 2 appears to be a screenshot from an accounting software program showing a payment of $155 to Tupper in 1999 for "Travel Reimburse-Retrouvaille." *Id.*, Ex 2. According to Hayden, this reimbursement was "for attendance at a Church-sponsored retreat for married couples." *Id.* ¶ 36. Hayden states that, based on his review of the Diocese's financial records "neither the Diocese nor the Bishop provided any money, stipend, advance, or other financial assistance to Fr. Tupper in 1999," other than this above reimbursement.

### Discussion

In response to a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over each defendant. *Chaney v. Vt. Bread Co.*, No. 2:21-cv-120, 2022 WL 767601, at *1 (D. Vt. Mar. 14, 2022). The trial court "has discretion to decide a pretrial motion to dismiss for lack of personal jurisdiction on the basis of affidavits alone, to permit discovery, and to conduct an evidentiary hearing." *State v. Atl. Richfield Co.*,

2016 VT 22, ¶ 9, 201 Vt. 342 (quoting *Godino v. Cleanthes*, 163 Vt. 237, 239, 656 A.2d 991, 992 (1995)).  Where, as here, the motion is made before the parties have engaged in discovery, and the court rules on the motion "on the basis of affidavits alone," the plaintiff "need make only a prima facie showing of jurisdiction, or, in other words, demonstrate facts which would support a finding of jurisdiction." *Id*. (quoting *Godino*, 163 Vt. at 239, 656 A.2d at 992); *see also State v. Meta Platforms, Inc.*, 2025 VT 51, ¶ 12, 346 A.3d 489, *cert. denied*, No. 25-909, 2026 WL 1463234 (U.S. May 26, 2026) (same).  Thus, as our Supreme Court has noted, a plaintiff's "burden . . . is relatively slight." *Godino*, 163 Vt. at 239, 656 A.2d at 992 (noting that, until issue of jurisdiction is tested "at evidentiary hearing or trial, prima facie showing suffices notwithstanding controverting evidence of moving party" (citation omitted)).  Moreover, when "no evidentiary hearing is held," the court construes "the pleadings in a light most favorable to the plaintiff." *Meta Platforms*, 2025 VT 51, ¶ 12 (quotation omitted); *see also Atl. Richfield Co.*, 2016 VT 22, ¶ 9 (in assessing the materials submitted, the trial court "eschews fact finding and simply accepts properly supported proffers of evidence as true and rules on the jurisdictional question as a matter of law" (quotation omitted)).

Vermont courts derive their authority to exercise personal jurisdiction over nonresident defendants from both constitutional and statutory law.  *Meta Platforms, Inc.*, 2025 VT 51, ¶ 13. Vermont's long-arm statute is 12 V.S.A. § 913(b), which "confers jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Id*. (quotation omitted).  As a result, "the statutory and constitutional analyses . . . are one and the same," and Vermont courts look to federal constitutional law to resolve personal jurisdictional questions.  *Id*. (quotation omitted).

The Due Process Clause permits a state court to assert personal jurisdiction over a nonresident defendant who has "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. ¶ 14 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Federal law recognizes two forms of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction exists when a defendant "is essentially at home in the State." *Id*. (quotation omitted).  Fish concedes that this Court cannot assert general jurisdiction over Defendants. Thus, the Court's inquiry is limited to whether it can exercise specific jurisdiction over Defendants.

> Specific jurisdiction is a claim specific inquiry.  To be subject to specific jurisdiction, the defendant (1) "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State" and (2) the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum."

*Id*. ¶ 15 (citation omitted; quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)); *see also Fitzgerald v. Little*, No. 2:24-cv-898, 2025 WL 1696242, at *3 (D. Vt. June 17, 2025) (stating that specific jurisdiction inquiry focuses on relationship among defendant, forum, and litigation).  "The critical consideration is whether the defendant's conduct and connection with the forum State are such that the defendant should reasonably anticipate being haled into court there." *Meta Platforms*, 2025 VT 51, ¶ 15 (quotation omitted).  Thus, a

3

nonresident defendant should not be subject to jurisdiction in a foreign state based on "fortuitous, attenuated, or random contacts." *Id*. (quotation omitted). However, even a single trip to Vermont can support jurisdiction if "'it creates a substantial connection with the forum' based on the 'nature and quality and the circumstances.'" *Giroux v. Foley*, No. 19-CV-00187, 2020 WL 1677073, at *4 (D. Vt. Apr. 6, 2020) (quoting *Burger King v. Rudzewicz*, 471 U.S.462, 475 n.18 (1985)).

Not surprisingly, courts in Vermont and elsewhere have had occasion to consider the question of specific jurisdiction in cases involving allegations against nonresident religious organizations based on abuse committed by members of their clergy in the forum state. As the Windsor County Civil Division recently observed,

> In the context of claims of childhood sexual abuse, "specific jurisdiction" over an out-of-state religious order has been held to exist when there is some evidence that the religious order specifically sent the abusive priest to the forum state for some religious purpose and either knew or should have known of the likelihood that sexual abuse would occur as a result.

*Veitch v. Benedictine Found. of Vt., Inc.*, No. 21-cv-00855, 2024 WL 4338802, at *3 (Vt. Super. Ct. Aug. 26, 2024) (Corbett, J.). Thus, in *Doe v. Roman Catholic Diocese of Greensburg*, 581 F. Supp. 3d 176, 192 (D.D.C. 2022), the federal district court found the plaintiff's prima facie burden to establish minimum contacts was satisfied where plaintiff alleged he was sexually abused by a priest during overnight trips to the forum that were "sponsored and organized in conjunction with the Diocese and Parish." Likewise, in *Thompson v. Roman Catholic Archbishop of Washington*, 735 F.Supp.2d 121, 129 (D. Del. 2010), the trial court concluded it had specific jurisdiction over the nonresident Archbishop where plaintiffs alleged that defendant knew or should have known of the reverend's sexual misconduct and that the reverend "was taking children on trips to Delaware." *See also id*. (holding "plaintiffs have satisfied the minimal pleading requirements to conduct limited jurisdictional discovery as to defendant the Archbishop of Washington"). And a New Jersey appellate state court found specific jurisdiction to be established over a Virginia Diocese that had granted permission to and encouraged a priest to serve in New Jersey despite being aware of the priest's sexual propensities towards children and maintained control and influence over the priest while he was serving in New Jersey. *Doe 70 v. Diocese of Metuchen*, 306 A.3d 237, 244-45 (N.J. Super. Ct. App. Div. 2023). The Court finds the *Veitch* Court's formulation of the necessary inquiry appropriate and persuasive, and evaluates the facts alleged in that context.

I.     Personal Jurisdiction over the Diocese and Bishop.

In his Complaint, Fish alleges that Bishop Cooney, Fr. Tupper's direct supervisor, told him and his grandfather that he was aware of Tupper's plans to travel with Fish to Vermont, that he had specifically approved of the itinerary, and that he had provided funding for the trip through the Diocese. Am. Compl. ¶¶ 45-47, 51. In addition, Fish alleges that Cooney admitted that there were other accusations and "causes for concern" regarding Tupper, and therefore, the Diocese "knew Tupper posed a danger to minor children and had the propensity to act in a sexually inappropriate manner." *Id*. ¶¶ 52-56. In other words, Fish asserts the trip to Vermont

4

was religious in nature and that Defendants knew of, sanctioned, and facilitated the trip by providing funding. The inference is certainly reasonable that Tupper would not have been able to step away from his duties at his Michigan parish to travel out of state for several days without prior authorization from his superior. Moreover, Fish contends Cooney and the Diocese had knowledge of other allegations of sexual abuse of children against Tupper at the time of the trip to Vermont. Such circumstances are distinguishable from cases where specific jurisdiction was found lacking because the nonresident Diocese was unaware of the clergy abuser's travel to the forum state with the plaintiff or the litigation was unrelated to the Diocese's minimum contacts with the forum state. *See, e.g.*, *Doe v. Archdiocese of Philadelphia*, No. 19-20934(FLW), 2020 WL 3410917, at \*1, 3 (D. N.J. June 22, 2020) (prima facie burden not met where priest took plaintiff to beach house in forum state without knowledge of or direction by Archdiocese and where purpose of trip was not religious in nature); *Veitch*, 2024 WL 4338802, at \*1, 4 (evidence failed to establish defendant sent the priest to Vermont for sanctioned retreat or was aware of his trip, but rather showed plaintiff met priest while visiting brother).

Defendants contend that because Fish failed to respond to the assertions of the Hayden Affidavit with an affidavit of his own presenting facts beyond the pleadings, their motion must be granted. This argument is unavailing. The Hayden Affidavit seeks to refute the allegation that the Diocese provided funding for Tupper's trip by claiming there is no record of such payment. However, Fish's allegations of knowledge and funding are not the type of conclusory allegations that typically have been found to be lacking. *See, e.g.*, *Cernansky v. Lefebvre*, 88 F. Supp. 3d 299, 308 (D. Vt. 2015) (plaintiff's "conclusory assertion of personal jurisdiction based upon an agency relationship" was insufficient in light of contrary testimony by defendant). On the contrary, Fish's assertions rely on the description of a meeting with Bishop Cooney attended by himself and his grandfather, along with others from the Diocese, where Cooney made statements and admissions. The Hayden Affidavit says nothing about this meeting, nor does it refute Fish's assertions. Thus, the Court must accept them as true in addressing Defendants' Rule 12(b)(2) motion. *Giroux v. Foley*, No. 19-CV-00187, 2020 WL 1677073, at \*2 (D. Vt. Apr. 6, 2020) ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." (quoting *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). Moreover, even if "the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id*. (quoting *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

Thus, the Court finds Fish's allegations are sufficient to warrant limited discovery on the issue of specific jurisdiction. *Thompson*, 735 F. Supp. 2d at 129 (finding plaintiffs' allegations "satisfied the minimal pleading requirements to conduct limited jurisdictional discovery"). The Hayden Affidavit would appear to cast doubt on Fish's assertion that Tupper's trip was funded by the Diocese, but as counsel noted during oral argument, all relevant church records are in Defendants' custody and control, and Fish is unable to provide evidence to support his allegations of funding and express approval of the trip without some amount of discovery. Further, the absence of a notation within the Diocese's financial records does not preclude the possibility that funding was provided through some other means. Therefore, the affidavit does not "provide[] all the necessary facts and answer[] all the questions regarding jurisdiction," such that jurisdictional discovery should not be permitted. *Cernansky*, 88 F. Supp. 3d at 308

5

(quotation omitted).  Accordingly, the motion to dismiss on behalf of the Diocese and the Bishop is denied without prejudice.

## II.        Personal Jurisdiction over Saint Francis Parish.

The same conclusion cannot be reached with respect to Saint Francis Parish.  The Amended Complaint is devoid of any factual allegations that would connect the parish with Tupper's trip with Fish to Vermont.  Indeed, Defendants submitted documentation showing that Saint Francis Parish was not incorporated in Michigan until 2020, which Fish does not dispute.  Nor has Fish responded with any facts that would show that Tupper was a pastor at Saint Francis during the time of his trip to Vermont, or that, as either an incorporated or unincorporated entity, it knew of, directed, condoned or facilitated the trip.  Rather, Fish asserts only that Tupper was assigned to Saint Philip Neri of Empire when his grandfather was one of Tupper's parishioners, and that Tupper sexually abused him when Tupper was the pastor at Saint Francis Solanus Mission, which is now overseen by the Saint Francis Parish.  *See* Am. Compl. ¶¶ 34, 40.  This is insufficient to demonstrate any minimum contacts by Saint Francis Parish with Vermont related to Tupper's alleged sexual abuse of Fish in the state in 1999.  Accordingly, the Court is unable to exercise personal jurisdiction over Saint Francis Parish, and its motion to dismiss must be granted.[2]

## Order

For the foregoing reasons, Defendants' Motion to Dismiss (Mot. # 4) is GRANTED as to Saint Francis Parish and DENIED without prejudice as to the Diocese and the Bishop.

The Court shall allow a 180-day period for jurisdictional discovery on relevant topics including the Bishop and the Diocese's ("Defendants'") and/or Bishop Cooney's knowledge, approval, funding, and/or facilitation of Fish and Tupper's 1999 trip to Vermont, the meetings alleged to have occurred in paragraphs 51-55 of the Amended Complaint, and Defendants' and/or Bishop Cooney's alleged knowledge or awareness that Tupper had a propensity to act in a sexually inappropriate way with minor children.

The initial discovery period may be extended or amended by agreement of the parties.  The Court expects that the parties will treat the term "jurisdictional" fairly broadly for purposes

---

[2] Given the Court's conclusions with regard to specific jurisdiction, the Court does not reach the second part of the jurisdictional analysis concerning whether exercising personal jurisdiction would be reasonable and not offend traditional notions of fair play and substantial justice.  *See* *Meta Platforms*, 2025 VT 51, ¶ 14; *N. Aircraft, Inc. v. Reed*, 154 Vt. 36, 42, 572 A.2d 1382, 1386 (1990) ("[O]nce the court determines that a nonresident defendant has purposefully established minimum contacts within the forum State, several factors must be considered to ensure that exercising personal jurisdiction over the defendant is reasonable and will not offend *International Shoe's* traditional notions of fair play and substantial justice.").  However, it seems evident that by enacting 12 V.S.A. § 522, "Vermont's legislature has expressed a clear interest in addressing childhood sexual assaults that occurred in Vermont, regardless of when they occurred."  *Giroux*, 2020 WL 1677073, at *5.

of this discovery, and it shall not be a valid basis for objection if a particular discovery request is relevant to issues involving the merits of the claims, provided it is also relevant to the jurisdictional issues. If discovery disputes arise on this or other points, the Court expects that the parties will work together in good faith to resolve them, and shall not place unnecessary burdens on the Court.

Defendants may renew and supplement their Rule 12(b)(2) motion to dismiss within 30 days following the end of the jurisdictional discovery period.

Electronically signed on July 21, 2026 at 2:05 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge